ORIGINAL

FILED
AUG 7 2008
U.S. COURT OF FEDERAL CLAIMS

UNITED STATES COURT OF FEDERAL CLAIMS

Lunda Construction Company
620 Gebhardt Road
Black River Falls, Wisconsin 54615,

Plaintiff,

v.

08-563 C

The United States,

Defendant.

## COMPLAINT

NOW COMES Plaintiff Lunda Construction Company ("Lunda") by its undersigned counsel, and as and for a complaint against the United States of America, alleges and states as follows:

1. Lunda is a Wisconsin corporation with its principal place of business at 620 Gebhardt Road, Black River Falls, Wisconsin 54615.

2. The United States Postal Service is an agency of the United States Government with jurisdiction over Postal Service matters (hereinafter referred to as "Postal Service").

3. On or about August 11, 2003, the Postal Service solicited proposals for the parking deck reconstruction in the Juneau Station in Milwaukee, Wisconsin, listing a construction cost range of $800,000 to $900,000. This solicitation was given solicitation no. 162640-03-A-0055.

4. Lunda timely submitted a proposal and was selected for the job.

5. On or about October 8, 2003 the Postal Service issued an offer and award to Lunda, listed as contract no. 162640-03-B-0170. The initial contract amount was $623,809.

6. A notice to proceed was issued on October 8, 2003.

7. The work was substantially completed on December 12, 2003, although due to weather conditions final sealing and pavement striping had yet to be completed. That work was completed by May 1, 2004.

8. Prior to February 10, 2006 certain leaks appeared at or near the site.

9. On February 10, 2006 the Postal Service concluded that the problem was related to the roof deck project.

10. During the spring and summer of 2006 several investigative visits and observations occurred.

11. Those visits and observations revealed facts demonstrating that the project was not properly designed.

12. Lunda had no responsibility for design of this project.

13. In investigating the leaks, the Postal Service relied on a report prepared by Larry Church of Walker Restoration Consultants.

14. Mr. Church was initially retained by Lunda to assist Lunda with this project. Mr. Church opined verbally that the design of this project placing a new waterproofing membrane over an existing bituthane membrane was ill-conceived and a poor design.

15. The Postal Service asked Lunda whether it could retain Mr. Church and Walker Restoration Consultants, rather than having Lunda retain them.

16. In an effort to collaboratively come to a solution for the project, Lunda acceded to the Postal Service's demand and allowed Church and Walker to be retained by the Postal Service and not by Lunda.

17. The Postal Service asked Lunda personnel to assist Mr. Church and Walker with their investigation and indicated that Lunda would be compensated for that work. See Exhibit A.

18. Lunda personnel did assist Mr. Church and Walker and Walker did come up with a report. Lunda submitted two invoices for the time spent assisting Mr. Church and Walker. No portion of that invoice has been paid.

19. The executive summary of the Walker report is attached as Exhibit B and states

> Based upon our field observations, testing, and review of the provided documents, we have concluded that water leakage into the USPS Juneau Station is primarily caused by the following contributing factors:
>
> 1. Drains installed with the drain rim higher than the structural slab at locations along the east and west walls, drains without sump receivers, without under deck clamps, and drains installed without isolation or drainage between drain extension and concrete topping slab. This item could relate to both design and construction. Lack of sump receivers and under deck clamps relate to construction.
>
> 2. Wall membrane termination details without mechanical support for the un-bonded membrane and without a mechanical support for the termination sealant. The wall termination is at the perimeter parapet walls. This item could relate to both design and construction.
>
> 3. Weak and/or no bond between the newer Carlisle membrane and older Bituthene membrane. This could relate to the material and installation.
>
> 4. Omission from the design and construction of subsurface drainage on the top of the waterproofing membrane; including the lack of a membrane system drainage layer, lack of slab profile for drainage along the north and south walls, and lack of slab profile for drainage between drains at the east and west walls.
>
> 5. Membrane sheet lap joints were found to be inconsistent. In locations where edges of the sheets were curved the lap distances generally contained splits or gaps or less than the required 2.5 inches lap. At sheets that covered the precast concrete parapet wall connection to the structural lap, sheet laps were observed that were not bonded together. This could relate to the material and installation.
>
> 6. Perimeter CMU wall and HVAC shaft allow water to penetrate into the interior. These items were not shown as part of the documents for the 2003 repair work and appear to relate to the original construction.

> Other factors were investigated, but were considered to have a minor or no effect on the water penetration into the interior of the postal station or truck loading dock.

20. Most of the factors identified by the Postal Service's own consultant as contributing factors to the leaking are not attributable to the construction of the project, but rather relate to the design of the project and/or other circumstances independent of the project.

21. Notwithstanding the above, the contracting officer rejected the waterproofing system pursuant with the contracting officer's final decision on August 10, 2007 (hereinafter "COFD") placing the entire economic burden of any problems with the system on Lunda. A copy of the COFD is attached hereto as Exhibit C.

22. In the COFD, the contracting officer wrote "Pursuant to the inspection and acceptance clause of the contract, Lunda shall remove and replace the waterproofing system without charge to the United States Postal Service …."

23. Lunda disagreed with the COFD and disputed the Postal Service's conclusions regarding the causation of the leaks.

24. Because of the imminent nature of the leaks, Lunda complied with the COFD under protest with a full reservation of rights. A letter attached as Exhibit D sets forth Lunda's position.

25. Lunda has performed and is performing work pursuant to the COFD, and other directives from the Postal Service related to that final decision (hereinafter "the replacement work"). To date Lunda has submitted 47 pay requests totaling $1,172,712.66. A summary of those pay requests is attached as Exhibit E and includes the invoices submitted for assisting Mr. Church and Walker.

26. The replacement work continues and is expected to be concluded by mid-October. Significant amounts remain to be invoiced.

27. The COFD acknowledged that the Walker report recommended that the rework includes a drainage layer on top of the membrane and under the insulation and further acknowledged that "the cost of this material was not included in the project's original design and that it would not be right for the Postal Service to request Lunda to furnish it without adequate compensation."

28. In the COFD, the Postal Service agreed to fairly compensate Lunda for the costs of the material.

29. In the process of the completion of the replacement work, the Postal Service has acknowledged that certain parts of the replacement work are outside the scope of the original work, are design changes, provide to the Postal Service a betterment or otherwise are work for which Lunda is entitled to payment.

30. The Postal Service has issued two contract modifications (8 and 9) and pursuant to the modifications has paid the Lunda amounts requested under Partial Pay Requests 5, 6, 7, 8, 9, 10, 13 and 14.

31. Contract Modification 9 also approved the Contract Change Proposal submitted via email on April 9, 2008 for providing elastomeric coating for the exposed interior face and top of the garage precast wall (parapet) panels. Those amounts have not yet been invoiced or paid.

32. During the completion of the replacement work, it became apparent that cracks in the pre-cast walls (which were not part of any work by Lunda) were a potential (and in the eyes of some probable) cause of the leaking.

33. Lunda and its subcontractors requested that nondestructive Rilem testing be performed on the suspect area of the pre-cast wall.

34. The Postal Service refused to allow this nondestructive testing to take place.

35. On May 23, 2008 Lunda made a Freedom of Information Act (FOIA) request to the Postal Service for information regarding the project at issue. See Exhibit F.

36. As of the filing of this action, 76 days later the Postal Service has not yet provided a single document in response to that request, though on August 1, 2008, the Postal Service did acknowledge that they were working on the request.

37. During the completion of the replacement work, the Postal Service and its agents repeatedly attempted to impose on Lunda design responsibility for the replacement work.

38. When Lunda resisted these attempts, the Postal Service demanded that Lunda not concern itself with legal niceties but rather "stop wasting time and proceed at once with the repair work as directed."

## JURISDICTION

39. This case is brought pursuant to the Contract Disputes Act of 1978, 41 U.S.C. § 609(a) and this Court has jurisdiction pursuant to that Act and the Tucker Act, 28 U.S.C. § 1491(a)(1).

40. Pursuant to 41 U.S.C. § 609(a), this action is timely brought in the United States Court of Federal Claims and shall proceed de novo.

## CLAIM ONE: BREACH OF CONTRACT/REVERSAL OF COFD

41. Lunda incorporates by reference all previous allegations as if fully set forth herein.

42. The Postal Service has breached its contract with Lunda by providing an improper and insufficient design, issuing the COFD, rejecting the waterproofing system installed by Lunda without acknowledging that improper and insufficient design, and failing to pay for the replacement work.

43. The COFD is erroneous and should be reversed.

44. The leakage was caused by (a) an improper or insufficient design; (b) factors outside the scope of work at issue; or (c) some combination of (a) and (b).

45. The breach by the Postal Service caused by the erroneous issuance of the COFD has caused damage to Lunda which comprise all costs and expenses incurred by Lunda in any sense as part of the investigation of the leaks, the assistance of Mr. Church and Walker and all elements of the replacement work.

46. This breach has caused damages in an amount to be determined at trial.

47. Lunda is entitled to interest on this amount pursuant to 41 U.S.C. sec. 611(a) from the date of each invoice submitted.

**CLAIM TWO: BREACH OF GOOD FAITH AND FAIR DEALING**

48. Lunda incorporates by reference all previous allegations as if fully set forth herein.

49. The Postal Service owes a duty of good faith and fair dealing to Lunda.

50. The Postal Service breached its duty of good faith and fair dealing by among other things, providing an inadequate design, not acknowledging that improper design in issuing the COFD, failing to reimburse Lunda for amounts the Postal Service acknowledged Lunda should be paid, failing to allow appropriate nondestructive testing to take place, attempting to impose on Lunda design responsibility, demanding that Lunda not stand on its legal rights and failing to respond to Lunda's FOIA request.

51. The breach by the United States Postal Service has caused damage to Lunda in an amount to be determined at trial.

52. Lunda is entitled to interest on this amount pursuant to 41 U.S.C. sec. 611(a) from the date of each invoice submitted.

**CLAIM THREE: CONTINGENT CLAIM FOR EXTRA WORK**

53. Lunda incorporates by reference all previous allegations as if fully set forth herein.

54. Claims 1 and 2 above request payment by the Postal Service to Lunda of all costs incurred by Lunda in performing the replacement work.

55. This claim 3 is unnecessary in the event that Claims 1 and 2 are granted in full.

56. In the event that claims 1 and 2 are not granted in full, Lunda is entitled to an equitable adjustment to the contract because (a) the cost of the replacement work exceeds the cost of the original work by that amount; (b) the Postal Service would be unjustly enriched if it were to retain the entire benefit of the replacement work with no further compensation and (c) significant portions of the replacement work were outside the scope of the original work.

57. Lunda is entitled to interest on this amount pursuant to 41 U.S.C. sec. 611(a) from the date of each invoice submitted.

WHEREFORE, Lunda Construction Company requests that this Court order judgment for Lunda on these claims for relief and awarding compensation to Lunda in an amount to be proven at trial, with interest on that amount to run from the date of each invoice; reasonable attorneys fees and costs pursuant to, among other authority, 28 U.S.C. sec. 2412 and such other relief as the Court may deem just and proper.

Respectfully submitted this 6 day of August, 2008.

KEVIN M. LONG

QUARLES & BRADY LLP
411 East Wisconsin Avenue, Suite 2040
Milwaukee, WI 53202-4497
Phone: 414-277-5163
Fax: 414-978-8963
Attorneys for Plaintiff, Lunda Construction Company

# EXHIBIT A

**Tim Hoffman**

**From:** Schech, Mike - Chicago, IL [mike.schech@usps.gov]
**Sent:** Wednesday, January 17, 2007 8:21 AM
**To:** Tim Hoffman
**Cc:** CHURCH, LARRY (Walker Restoration); Vlcek, John - Chicago, IL; Infanger, Maria R - Chicago, IL; FISCHER, BRIAN; HANSON, BOB
**Subject:** RE: Investigations

Tim,

USPS will reimburse you for any additional work directly required by Walker Restoration in the completion of their investigation. Larry Church has been discussing it with me beforehand.

Michael Schech
Architect/Engineer

Great Lakes Facilities Service Office
62 Stratford Dr, Bloomingdale IL 60117-7000
PH 630-295-6251 / FX 630-295-6262
mike.schech@usps.gov

-----Original Message-----
From: Tim Hoffman [mailto:thoffman@lundaconstruction.com]
Sent: Wednesday, January 17, 2007 7:27 AM
To: Schech, Mike - Chicago, IL
Subject: FW: Investigations

Mike

Lunda construction and our subcontractor have been assisting Walker Restoration in the deck leaking investigations. To date we have not received your authorization and approval to complete this work. As requested by Walker, Lunda will be removing additional areas of the deck. The following areas where scheduled to be saw cut on Tuesday 1/16/07 with the concrete panels to be removed on Thursday 1/18/07. North wall 24ft x 3ft, West wall 10ft x 3ft and in the center of the deck an area 8ft x 10ft. It is my understanding that these areas have been reviewed and agreed to by Walker and FF+T. Lunda request your approval and authorization to proceed with this additional work. Lunda will be tracking all investigation work on a time and materials basis and billing on a monthly basis.

Thank you,

Timothy J. Hoffman

Lunda Construction Company

Senior Project Manager

Office Phone: (920) 788-5238

Fax: (920) 788-0229

Cell: (920) 428-1328

The information in this email is confidential and may be privileged. It is intended solely for those to who it is addressed; access to anyone else is unauthorized. If this message has been sent to you in error, do not review, disseminate, distribute or copy it. Please reply to the sender that you have received the message in error, then delete it. Thank you for your cooperation.

# EXHIBIT B

## EXECUTIVE SUMMARY

As requested by Belli & Belli Architects and the United States Postal Service, Walker Restoration Consultants (WRC) investigated reported water leakage associated with the roof plaza parking deck waterproofing system above the Juneau Station postal facility in Milwaukee, Wisconsin. The investigation included field observations, documentation of exploratory openings, limited water spray testing, and review of construction documents and submittals.

The United States Post Office (USPS) Juneau Station building, constructed in 1974, is a two-level building with automobile parking on the roof level. Since this initial construction, the roof parking plaza waterproofing system has been repaired with construction projects in 1987 and 2003. The 2003 construction work was designed by Fischer-Fischer-Theis, Inc., the Architect and constructed by Lunda Construction, the Contractor. After completion of the 2003 work, water leaks were reported. The architect and contractor have been working to address leaks.

Based upon our field observations, testing, and review of the provided documents, we have concluded that water leakage into the USPS Juneau Station is primarily caused by the following contributing factors:

1. Drains installed with the drain rim higher than the structural slab at locations along the east and west walls, drains without sump receivers, without under deck clamps, and drains installed without isolation or drainage between drain extension and concrete topping slab. This item could relate to both design and construction. Lack of sump receivers and under deck clamps relate to construction.

2. Wall membrane termination details without mechanical support for the un-bonded membrane and without a mechanical support for the termination sealant. The wall termination is at the perimeter parapet walls. This item could relate to both design and construction.

3. Weak and/or no bond between the newer Carlisle membrane and older Bituthene membrane. This could relate to the material and installation.

4. Omission from the design and construction of subsurface drainage on the top of the waterproofing membrane; including the lack of a membrane system drainage layer, lack of slab profile for drainage along the north and south walls, and lack

of slab profile for drainage between drains at the east and west walls.

5. Membrane sheet lap joints were found to be inconsistent. In locations where edges of the sheets were curved the lap distances generally contained splits or gaps or less than the required 2.5 inches lap. At sheets that covered the precast concrete parapet wall connection to the structural lap, sheet laps were observed that were not bonded together. This could relate to the material and installation.

6. Perimeter CMU wall and HVAC shaft allow water to penetrate into the interior. These items were not shown as part of the documents for the 2003 repair work and appear to relate to the original construction.

Other factors were investigated, but were considered to have a minor or no effect on the water penetration into the interior of the postal station or truck loading dock.

Larry D. Church, P.E. 4/30/2007

K. Nam Shiu, S.E., P.E. 4/30/2007

# EXHIBIT C

08/10/2007 15:04 FAX 920 788 9 LUNDA CONST CO 002/007

AUG-10-2007 14:32 FROM: TO:920 788 0229 P.1/6

UNITED STATES POSTAL SERVICE

# Facsimile Cover Sheet

| | |
|---|---|
| TO: | LARRY LUNDA |
| Company: | LUNDA CONSTR CO. |
| Phone: | |
| Fax: | 920-788-0229 |

| | |
|---|---|
| FROM: | JOHN VLCEK |
| Company: | USPS |
| | CONTRACTING OFFICER |
| | |
| Phone: | |
| Fax: | |

| | |
|---|---|
| Date: | 8/10/2007 |
| Pages including this cover page: | 6 |

CONTRACTING OFFICER'S FINAL DECISION LETTER REGARDING USPS JUNEAU STATION USPS CONTRACT# 162640-03-B-0170

ORIG SENT VIA U.S. MAIL

GREAT LAKES FACILITIES SERVICE OFFICE

UNITED STATES POSTAL SERVICE

August 10, 2007

Mr. Larry Lunda, President
Lunda Construction Company
2000 Taylor Street
PO Box 228
Little Chute, WI 54140

Via Certified Mail
No. 7005-3110-0003-5709-8850
Advanced copy via FAX
(920) 788-0229

RE: USPS Contract 162640-03-B-0170
USPS Juneau Station, Milwaukee, WI
Contracting Officer's Final Decision

Dear Mr. Lunda:

This letter constitutes the Contracting Officer's Final Decision regarding the discovery of latent defects and associated water leakage regarding Lunda Construction Company's (Lunda's) performance at the USPS Juneau Station in Milwaukee, WI.

## A. BACKGROUND

The USPS entered into Contract No. 162640-03-B-0170 with Lunda for the repairs and renovation of the rooftop parking deck at Juneau Station. More specifically, the rooftop parking deck surface at the Juneau Station, Milwaukee, WI, containing approximately 38,000 square feet, was to be replaced. The work included, as set forth in the Statement of Work, demolition and removal of existing 3" thick concrete surface, polyethylene, and insulation, repair of existing pre-cast concrete wall panel connections, new waterproofing membrane system over existing bituthene waterproofing, new rigid insulation, new polyethylene sheets, new deck drains, and new 4" thick concrete surface. The initial contract price was $623,809 and the work was to be completed within 90 calendar days. Notice to proceed was issued on October 8, 2003, which resulted in a contract completion date of January 7, 2004.

The work was substantially completed on December 12, 2003, although, due to weather conditions, final sealing and pavement striping had not yet been done.

The USPS made a determination not to use the deck for parking over the first winter, in order to give the concrete additional curing time and to avoid the need for plowing or the use of any kind of deicing chemicals on the new deck. An off-site parking lease that was put in place to allow the project to proceed was extended for the winter months.

Soon after acceptance, and before the USPS even began using the deck for parking, leaks began. Repairs were made but it continued to leak. After two years of leakage and repairs, it was apparent that there were serious underlying problems with the deck that were causing the waterproofing failures.

During the spring and summer of 2006, several investigative visits and observations occurred including water testing and the removal of selected areas of the concrete topping slab and insulation so as to determine the cause(s) of the leakage.

82 STRATFORD DR
BLOOMINGDALE, IL 60117-7000
TEL: 630-295-8200
FAX: 630-295-8262
WWW.USPS.COM

Mr. Larry Lunda
USPS Contract 162640-03-B-0170
USPS Juneau Station, Milwaukee, WI
Contracting Officer's Final Decision
August 10, 2007
Page 2

It was then decided that the Postal Service would hire an independent consulting firm to provide an unbiased determination of the leakage situation. The well-known firm of Walker Restoration Consultants was hired. Larry Church was Walker's lead investigator for this project.

Walker prepared a comprehensive Water Leakage Investigation report dated 4/30/2007 ("Report"). A copy of this report was transmitted to both Lunda and the project's Architect, Fischer-Fischer-Theis, Inc. (FFT) on 5/18/2007. The Report identified several contributing factors that were the primary cause of the leakage. These factors are discussed in more detail below under the Findings section of this decision.

## B. FINDINGS

Based upon the Walker Report, as well as our own observations, it has become clear that the new waterproofing membrane was not properly installed; and this is the primary contributing factor for the leakage. If it had been installed properly, the facility would not be experiencing leaks. The report discusses in detail the primary ways in which the membrane was not installed properly—poor bonding between new membrane and the existing; and poor lapping of adjoining membrane sheets. Regarding the bonding, the Report noted that there was either a weak bond, or no bond, between the Carlisle membrane installed by Lunda and the existing Bituthene membrane. This was readily apparent by the wrinkles that were observed throughout the membrane, and also supported by the Report's finding that in most locations it was possible to separate the two membranes by hand. The wrinkles and the ability to easily separate the two layers of membrane indicate that the new membrane was not adequately adhered to the existing membrane. The Report posits a couple of reasons as to why the membrane did not bond; but it was Lunda's responsibility to ensure proper bonding of the waterproof membrane. This lack of bond between the two membranes was identified in the Report as one of the primary causes of the leakage. Without a proper bond between the two membranes, water was able to get into the space between the two membranes. The Report also discusses inconsistent lap widths as another contributing factor. As required in the contract, the end laps and side laps were to be installed as required by the manufacturer – Section 07110, Part 3.3B. The installation instructions for the Carlisle membrane, which was installed, specified a minimum lap at the side seams of 2.5 inches and 5 inches at the end seam. In several locations it was noted that the lap widths were less than the minimum required 2.5 inches. In some cases, there were no overlaps, but gaps. Additionally, the presence of wrinkled membrane further evidences the failure of the bond. It was also observed that, at the perimeter waterproofing sheets that covered the precast concrete parapet wall connection, in some instances the sheet laps were not even bonded together. As noted in the Report, in order for a membrane to provide a continuous moisture barrier, the sheets must be lapped correctly; and if it's lapped correctly, a seam will be formed that will not be separated under normal use. Lunda failed to lap the sheets correctly.

Beyond the problems related directly to the poor membrane installation, the Report also noted that the drains were installed improperly along the east and west walls in that the drain rim was higher than the structural slab. In some cases the drains were significantly above the level of the slab. This prevented drainage into the drain and since there was no drainage into the drain, there was standing water at these locations which in turn provides an opportunity for water to enter any weakness in the waterproofing membrane. Also, it was noted in the Report that while the project drawings required installation of sump receivers and under-deck clamps, Lunda had not installed them. Also, the drains installed by Lunda were

different than those that had been approved during the shop drawing process. The sump receiver would have lowered the drain and the under-deck clamp would reduce drain movement from temperature changes that could crack the membrane.

The Report lists some other factors which could have contributed to the leakage, but were found to have not done so. I will address these other factors. The Report mentions the lack of a drainage layer on top of the membrane and under the insulation and the lack of drainage channels. Neither of these items were required by the membrane manufacturer (Carlisle) at the time this project was designed. Moreover, neither one of these items would have been necessary if the waterproofing membrane had been installed properly in the first place. This was confirmed both in conversations with Larry Church as well as being expressly stated in the Report that "if the waterproofing system is intact, lack of a drainage layer would not by itself result in leakage." It should also be noted that during our investigations of the rooftop deck, Lunda had installed insulation with drainage channels in some areas of the parking deck but leakage occurred in these areas as well, so the drainage channel did not prevent leakage. Thus, it is my finding that this factor did not cause the leakage.

The Report also refers to the membrane termination on the vertical wall panels and the lack of termination bars. The membrane on the vertical surface was designed such that it was left unbonded on the lower part of the wall panels, and attached only at the top of the membrane. This was the same design used when the rooftop deck was repaired in 1987 and this design presented no leakage problems for over 15 years. This particular design is meant to allow for movement in the membrane so as to minimize the potential for stress and possible breakage at the joint between the structural deck and the vertical wall. A termination bar is merely another alternative that could have been used during the design of this project. Either one would have prevented leakage if the lap and bond between the waterproofing membranes would have been done properly.

There was one other item mentioned in the Report as contributing to the leakage and that is that water leaked into the building at the perimeter CMU wall and at the concrete cap above the HVAC unit. In so far as portions of these areas were not within the scope of work for Contract No. 162640-03-B-0170 with Lunda, should any repairs be made in these areas by Lunda under the terms of this contract for which they were not originally responsible for said repairs, then any such additional work would be considered as additional scope and Lunda will be reimbursed accordingly. It should be noted that as part of the contract work Lunda was required to clean and seal the joint between the asphalt parking lot and the exterior of the wall along the east side of the building as indicated by the note on contract drawing sheet S-101, therefore should this joint be determined inadequate, then Lunda will repair it at no additional cost.

## C. CONCLUSION

In conclusion, it is my decision as Contracting Officer to reject the waterproofing system installed by Lunda on the roof deck since the workmanship of the rooftop deck and waterproofing did not conform to the contract requirements. Pursuant to the Inspection and Acceptance clause of the Contract, Lunda shall remove and replace the waterproofing system without charge to the United States Postal Service within 75 days of receipt of this decision.

Lunda is directed to effectively remove and replace the entire concrete wearing surface, curbs, insulation and waterproofing membrane with new membrane, insulation and concrete curbs and wearing surface. This is a general description of the work and will include flashing, caulking, drains, piping, etc... all as required for a total and complete installation of a waterproof system. The remedial work design documents will be prepared by FFT. All miscellaneous and incidental items for a complete project shall be included. The remedial work already performed and to be completed along the east and south perimeter walls will remain and shall be incorporated into the replacement in a manner so as to warrant a waterproof deck consistent with the original contract requirements. The hot applied membrane system shall be applied sufficiently along the south perimeter wall to facilitate water drainage and direct same toward deck drain structures.

The work along the north and west perimeter walls shall continue to be per the remedial work design that was proposed by the Contractor and Carlisle using the hot applied membrane concept that was suggested to mitigate the condition along the perimeter caused by the contractor's failed work

In an effort to mitigate the cost of the repairs by the contractor, the USPS is willing to accept the construction of the major deck area away from the perimeter using the originally specified sheet membrane material as long as it is acceptable to both the contractor and their supplier, Carlisle. However, Lunda's inadequate bonding of the new to existing membranes has damaged and compromised the underlying substrate in such a manner so as to not adequately allow the USPS to ensure subsequent work will be furnished and installed in a manner sufficient to provide an effective bond. Therefore, Lunda shall fully remove both the newer and previously existing sheet membranes and shot blast the concrete deck in a manner sufficient to allow an effective bare concrete substrate to allow for an adequate bond with the new sheet material.

Should Lunda not be able to warrant that they can effectively get an adequate bond using the sheet material, they may at their additional expense choose to use the hot applied system being used at the perimeter for the entire deck area.

Due to the situation that was caused by the use of inadequate and improperly furnished and installed drain components, as well as the improperly bonded waterproofing material issues previously mentioned, the USPS has considerable apprehension in Lunda's or their subcontractor's ability to properly install these components in the remedial work. It is my position that if the membrane, insulation, and other components previously specified are properly furnished and installed, then the drainage layer mentioned in the Walker Report is not needed. This can further be supported by the length of time the previously applied membrane, following the same design, was installed and performed adequately.

The Walker Report, (similar to the perimeter remedial design previously proposed by Carlisle and implemented by Lunda), has addressed the same concern by the consideration of a 'belt and suspenders' approach. Walker has recommended that the remedial design include the addition of a drainage layer on top of the membrane and under the insulation. The Postal Service's position on this aspect of the work is as follows: if Lunda can guarantee that the sheet waterproofing material and drainage structures will be properly furnished and installed so as to positively shed water and not have a repeat of the current installed situation, the USPS would be willing to forgo the belt and suspenders approach which would require the installation of the drainage material. However, if Lunda does not feel comfortable with this

Mr. Larry Lunda
USPS Contract 162640-03-B-0170
USPS Juneau Station, Milwaukee, WI
Contracting Officer's Final Decision
August 10, 2007
Page 5

situation or have this confidence, then I believe the drainage layer material should be furnished. I do acknowledge that the cost of this material was not included in the project's original design, and therefore feel it would not be right for the USPS to request Lunda to furnish it without adequate compensation. Therefore if Lunda would choose to recommend that the drainage material be used as an additional safety measure to assist water migration, the USPS would agree to fairly compensate Lunda for the cost of the material. Should Lunda not recommend its addition, I would fully expect that Lunda will stand behind their reinstallation of the previously specified material.

The USPS is affording Lunda an opportunity to mitigate the costs by doing this work directly. If for some reason you decline to promptly perform the work and follow my directive, the USPS, pursuant to the Inspection and Acceptance clause of the Contract, will re-procure the work with another contractor and charge to cost Lunda.

Lunda's remedial rework will require phasing and close coordination with the users of the facility so as to maintain an adequate amount of employee and customer parking during the duration of the work. Should Lunda be unable or unwilling to phase the work in such a manner to provide this needed parking, then Lunda, at their expense, will need to contract for a nearby rental parking lot, subject to USPS approval of quantity and location, to allow a portion, or perhaps all, parking to be removed from the deck so that the project can be done adequately without severely impacting the needs of the facility. In order to further mitigate Lunda's costs, the USPS would be willing to afford additional time for the total completion of the remedial work, effectively requiring completing all perimeter work yet this construction season, before the onset of winter weather, and allowing Lunda to complete a phased replacement of the remainder of the center portion of the waterproofing and deck in the spring.

Please contact USPS Project Manager Michael Schech at 630-295-6251 promptly upon receipt of this decision to advise of your schedule for mobilization and work activities so that he may coordinate a meeting with the local facility to advise them of same.

This is the final Decision of the Contracting Officer pursuant to the Contracts Disputes Act of 1978 and the clause of your contract entitled Claims and Disputes. You may appeal this decision to the Postal Service Board of Contract Appeals by mailing or otherwise furnishing written notice (preferably in triplicate) to the Contracting Officer within 90 days from the date that you receive this decision. This notice should identify the contract number referenced in this decision, and indicate that an appeal is intended. Alternatively, you may bring the action directly in the United States Claims Court within 12 months from the date you receive this decision.

Sincerely,

John A. Vlcek
Contracting Officer

cc: Maria Infanger – USPS Office of Field Legal Services
Mike Schech – USPS Project Manager
Brian Fischer – Fischer - Fischer - Theis, Inc.

# EXHIBIT D

LUNDA CONSTRUCTION COMPANY
620 GEBHARDT ROAD • P.O. BOX 669
BLACK RIVER FALLS, WI 54615

PH: (715) 284-9491 FAX: (715) 284-9146

BRIDGES • PILE DRIVING • DAMS

*An Equal Employment Opportunity Employer • Constructing Safely*

September 14, 2007

United States Postal Service
222 S. Riverside Plaza
Chicago, IL 60606

Via Facsimile (312) 669-5981
And U.S. Mail

Attn: Maria Infanger

Re: Response to Postal Service's August 10, 2007 Contracting Officer's Decision
USPS Juneau Station, Milwaukee, WI
USPS Contract No. 162640-03-B-0170
Lunda Project No. 2039

Dear Ms. Infanger:

Lunda Construction has received the August 10, 2007 Contracting Officer's Decision regarding the Juneau Station project. Lunda has met with the Postal Service and discussed many of the issues surrounding the decision.

Although we dispute many of the statements made in the August 10th decision, and we dispute the Postal Service's conclusions regarding causation of the leaks, we feel that a letter writing campaign, and subsequent arguing, would not be appropriate at this time. The leaking is an imminent problem and therefore we will comply, under protest and with a full reservation of rights, with the Postal Service's directive to remove and replace the waterproofing system and deck. As the old deck and waterproofing system are removed, we will make further observations and tests to help in analyzing the cause of the leaking. We trust that the Postal Service will do the same.

By agreeing to move forward, Lunda is not agreeing to the allegations made in the August 10, 2007 Contracting Officer's Decision. Lunda reserves any and all rights to seek reimbursement of the costs incurred in this reconstruction work from the Postal Service and/or any other parties.

Both Lunda and the Postal Service are faced with a very difficult situation. We appreciate the Postal Service's willingness to meet and talk about the issues. It is our understanding that the Postal Service will review and consider the information that has and will come to light as we proceed with the reconstruction. We are glad that the Postal Service has agreed to further

discussions and reconsideration of its position regarding responsibility for the reconstruction work.

Please feel free to call me at (715) 284-9491 with any questions or comments. Thank you for your cooperation.

Very truly yours,

LUNDA CONSTRUCTIONCOMPANY

Christian Fox
Corporate Counsel

Cc: John Vlcek, via facsimile (630) 295-6262
Kevin Long, Quarles & Brady
Kevco Inc., via facsimile (414) 764-8926
Illingworth Corporation, via facsimile (414) 476-0916
Ivan Rice & Sons, via facsimile (608) 868-2171

# EXHIBIT E

# JOB 2039 USPS - JUNEAU STATION INVOICE BREAKDOWN

06/05/08

| INVOICE DATE | INVOICE NUMBER | PAY REQUEST NUMBER | INVOICE DESCRIPTION | AMOUNT INVOICED | PAID DATE | AMOUNT PAID | COMMENTS (Payment Status) |
|---|---|---|---|---|---|---|---|
| 1/31/2008 | 080130440 | 1 | Base Extra Cost Of Plaza Deck Repairs Of South & East Areas Per Fischer, Fischer, Theis Revised Design. | $ 227,461.66 | | | |
| 10/2/2007 | 07330100A | 2A | Labor, Material & Equipment Expended For Period To Perform Additional Work Per USPS Direction, Assistance To Walker Engineering & Fischer, Fischer Tice For Testing Areas. | $ 31,823.66 | | | Authorized by Mike Schech per email dated January 17, 2007 |
| 1/31/2008 | 080130450 | 3 | Extra - Assist Walker Restoration-Labor, Material & Equipment Expended For Period To Remove Three Temporary Enclosured & Patch Concrete. | $ 20,435.40 | | | Authorized by Mike Schech per email dated January 17, 2007 |
| 1/31/2008 | 080130460 | 4 | Extra-Labor, Material & Equipment Expended For Period Due To Project Delay. | $ 6,077.93 | | | |
| 1/31/2008 | 080130470 | 5 | Extra-Labor, Material & Equipment Expended For Period To Perform Structural Deck Surface Repair. | $ 6,784.80 | 08/01/08 | $ 6,785.00 | Mod #8 |
| 1/31/2008 | 080130480 | 6 | Extra-Labor, Material & Equipment Expended For Period To Perform Edge Of Ramp Repair. | $ 1,887.56 | 08/01/08 | $ 1,888.00 | Mod #8 |
| 1/31/2008 | 080130490 | 7 | Extra-Labor, Material & Equipment Expended For Period To Reroute Conduit In East Repair Area. | $ 5,241.50 | 08/01/08 | $ 5,241.00 | Mod #8 |
| 1/31/2008 | 080130500 | 8 | Extra-Labor, Material & Equipment Expended For Period For Additional South Supplemental Drain. | $ 9,158.59 | 08/01/08 | $ 9,064.00 | Less $94.00 Mod #8 |
| 1/31/2008 | 080130510 | 9 | Extra-Labor, Material & Equipment Expended For Period To Install Make Up Air Unit Curb & Vent Stack. | $ 6,941.67 | 08/01/08 | $ 6,942.00 | Mod #8 |
| 1/31/2008 | 080130520 | 10 | Extra-Labor, Material & Equipment Expended For Period To Seal Parking Lot, Revised Material Specification, Reworked Original Installation. | $ 3,338.98 | 08/01/08 | $ 3,339.00 | Mod #9 |
| 1/31/2008 | 080130530 | 11 | Extra-Labor, Material & Equipment Expended For Period To Perform Needless Removal Of 2006 Installed CCW 500R Hot Applied Membrane. | $ 20,174.97 | | | |
| 1/31/2008 | 080130540 | 12 | Extra-Labor, Material & Equipment Expended For Period To Perform Needless Removal & Replacement Of Concrete Cant. | $ 22,476.74 | | | |
| 1/31/2008 | 080130550 | 13 | Extra-Labor, Material & Equipment Expended For Period To Perform Removal Of Drywall In Truck Maneuvering Area As Directed By Mike Schech/USPS. | $ 1,852.78 | 08/01/08 | $ 1,853.00 | Mod #9 |
| 1/31/2008 | 080130560 | 14 | Extra-Labor, Material & Equipment Expended For Period To Perform Removal Reglet & Apply CCW201 Sealant. | $ 6,829.23 | 08/01/08 | $ 6,829.00 | Mod #9 |
| 1/31/2008 | 080130570 | 15 | Extra-Water Permit Cost/Project Delay. | $ 80.30 | | | |
| 1/31/2008 | 080130580 | 16 | Extra-Labor, Material & Equipment Expended For Period Due To Revised Drain Detail. Set Drain Pan Into Hot Applied Membrane. | $ 5,464.13 | | | |
| 1/31/2008 | 080130590 | 17 | Extra-Labor, Material & Equipment Expended For Period To Perform Snow & Ice Removal. | $ 28,327.23 | | | |
| 1/31/2008 | 080130600 | 18 | Extra-Labor, Material & Equipment Expended For Period To Maintain Heated & Dry Conditions On Project. | $ 47,376.83 | | | |
| 4/9/2008 | 080130450C | Credit Memo | Credit Being Issued Against Our Inv# 080130450 Per Agreement Where Kevco Was Billed Twice. Once On No. 2A And Then Again In Error On No. 3. | $ (11,451.53) | | | Authorized by Mike Schech per email dated January 17, 2007 |
| 4/30/2008 | 080430660 | 19 | Extra-Labor, Materials & Equipment Expended To Perform Snow & Ice Removal. | $ 73,918.58 | | | |
| 4/30/2008 | 080430670 | 20 | Extra-Labor, Materials & Equipment Expended To Remove & Replace Concrete Cant To Install CCW500R Material Under Drain Pans Due To Revised Detail. | $ 1,767.10 | | | |
| 4/30/2008 | 080430680 | 21 | Extra-Labor, Materials & Equipment To Replace Waterproofing On Southwest Section Due To Needless Removal Of 2006 Installed Waterproofing. | $ 4,977.05 | | | |
| 4/30/2008 | 080430690 | 22 | Extra-Labor, Materials & Equipment To Complete Water Testing. Water Test Not A Project Requirement Of 2003 Contract. | $ 14,761.26 | | | |
| 4/30/2008 | 080430700 | 23 | Labor, Materials & Equipment To Re-Shotblast Deck To Remove Carbonization Of Concrete Caused By Project Delay. | $ 7,308.40 | | | |
| 4/30/2008 | 080430710 | 24 | Extra-Labor, Materials & Equipment Expended To Maintain Heated & Dry Conditions Due To Project Delay. | $ 56,458.17 | | | |

# JOB 2039 USPS - JUNEAU STATION INVOICE BREAKDOWN

06/05/08

| INVOICE DATE | INVOICE NUMBER | PAY REQUEST NUMBER | INVOICE DESCRIPTION | AMOUNT INVOICED | PAID DATE | AMOUNT PAID | COMMENTS (Payment Status) |
|---|---|---|---|---|---|---|---|
| 4/30/2008 | 080430720 | 25 | Extra-Labor, Materials & Equipment Expended To Seal Flag Pole Fastener Penetrations. | $ 354.18 | | | |
| 4/30/2008 | 080430730 | 26 | Base Extra Cost Of Plaza Deck Repairs Of South & East Areas Per Fischer, Fischer, Theis Revised Design. | $ 61,942.57 | | | |
| 5/28/2008 | 080530480 | 27 | Base Work To Repair Plaza Deck Due To Design Issues. | $ 201,360.78 | | | |
| 5/28/2008 | 080530490 | 28 | Extra-Labor, Material & Equipment Expended For Water Flood Testing Stand Pipe Installation (Weekending 2/16/08). | $ 2,612.50 | | | |
| 5/28/2008 | 080530500 | 29 | Extra-Labor, Material & Equipment Expended To Secure Off-Site Parking For US Postal Service Employees (Weekending 4/5; 4/12; 5/3 & 5/10 2008) | $ 7,342.23 | | | |
| 5/28/2008 | 080530510 | 30 | Extra-Labor, Material & Equipment Expended To Perform Concrete Repairs At Drains On West Wall (Weekending 5/17/08). | $ 541.45 | | | PDL #5 |
| 5/28/2008 | 080530520 | 31 | Extra-Labor, Material & Equipment Expended For Temporary Weather Protection (Weekending 3/1; 3/15; 3/22; 3/29; 4/5; 4/26 & 5/3 2008). | $ 40,104.40 | | | |
| 5/28/2008 | 080530530 | 32 | Extra-Labor, Material & Equipment Expended To Perform Extra Work Due To Increased Weight Restrictions (Weekending 5/3 & 5/10 2008). | $ 902.78 | | | |
| 5/28/2008 | 080530540 | 33 | Extra-Labor, Material & Equipment Expended To Install Temporary Waterproofing At Filer Area (Weekending 3/22/08) | $ 1,409.66 | | | |
| 5/28/2008 | 080530550 | 34 | Extra-Labor, Material & Equipment Expended For The Installation Of CCW 300HT & CCW 201 Sealant At Sheet Metal Flashings (Weekending 4/26; 5/3; & 5/10 2008). | $ 4,537.93 | | | |
| 5/28/2008 | 080530560 | 35 | Extra-Labor, Material & Equipment Expended To Remove Old Wood Cant & Install Styrofoam & Caulk (Weekending 3/22 & 5/17 2008). | $ 5,152.08 | | | |
| 7/18/2008 | 080730220 | 36 | Extra-Labor, Material & Equipment Expended To Rework Drain Heads Into Hot CCW500 South & East Repair Area. | $ 540.14 | | | |
| 7/18/2008 | 080730230 | 37 | Extra-Expenses Incurred For 2nd Months Rental Fees For Parking Spaces For USPS Employees During Construction Activities. | $ 5,423.00 | | | |
| 7/18/2008 | 080730240 | 38 | Extra-Labor, Material & Equipment For Printing Drawings Received From FFT. USPS (Bob Navarre) Instructed Not To Use. | $ 127.57 | | | |
| 7/18/2008 | 080730250 | 39 | Extra-Labor, Material & Equipment For Electrical Reroute, Clean & Paint Exposed Conduits In Structural Deck. | $ 6,418.63 | | | PDL #4 |
| 7/18/2008 | 080730260 | 40 | Extra-Material & Equipment To Repair Mark Rosewicz (Station Manager) Office Per Bob Navarre. | $ 160.99 | | | |
| 7/18/2008 | 080730270 | 41 | Extra-Labor, Material & Equipment To Install (2) Heater Stacks & Reroute West Stair Tower AC Unit Utilities. | $ 10,324.58 | | | PDL #5 |
| 7/18/2008 | 080730280 | 42 | Extra-Labor, Material & Equipment To Remove Reglet From Precast Wall Panel & Caulk. | $ 2,810.08 | | | |
| 7/18/2008 | 080730290 | 43 | Extra-Labor, Material & Equipment To Grind Out/Clean Existing Cracks In Structural Deck Shrinkage/Control/Construction Joints To Prevent Leaks Into Building. | $ 4,898.44 | | | |
| 7/18/2008 | 080730300 | 44 | Extra-Labor, Material & Equipment To Repair Structural Deck. | $ 407.90 | | | PDL #5 |
| 7/18/2008 | 080730310 | 45 | Base Work To Perform Plaza Deck Reqair Per FF&T Revised Drawings & Contracting Officer's Directive. | $ 214,217.78 | | | |
| 7/18/2008 | 080730320 | 46 | Extra-Equipment Cost Due To Increased Weight Restriction. | $ 330.00 | | | |
| 7/18/2008 | 080730330 | 47 | Extra-Labor, Material & Equipment To Demobilize Temporary Weather Enclosures Used On South & East Repair Areas & Clean Up. | $ 1,320.00 | | | |
| | | | **TOTAL INVOICED TO DATE** | **$ 1,172,712.66** | | **$ 41,941.00** | |

# EXHIBIT F

Quarles & Brady LLP

411 East Wisconsin Avenue
Milwaukee, Wisconsin 53202-4497
Tel 414.277.5000
Fax 414.271.3552
www.quarles.com

*Attorneys at Law in:*
*Phoenix and Tucson, Arizona*
*Naples, Florida*
*Chicago, Illinois*
*Milwaukee and Madison, Wisconsin*

Writer's Direct Dial: 602.229.5453
E-Mail: bnaylor@quarles.com

23 May 2008

**VIA UPS OVERNIGHT MAIL**

Manager, Records Office
U.S. Postal Service
475 L'Enfant Plz SW, Rm 5821
Washington DC 20260

***Re: Freedom of Information Act Request***

Dear Sir or Madam:

We represent Lunda Construction Company respecting the Parking Deck reconstruction at the Juneau Avenue Postal Station in Milwaukee Wisconsin. That project was Solicitation Number 162640-03-A-0055, the Contract between Lunda and USPS is Number 162640-03-B-0170. The Postal Service contracted with Fischer Fischer Theis, Inc. on that construction project for architectural services.

Leaks occurred after the project was substantially completed. The USPS hired Walker Restoration Consultants, who prepared a report dated 4/30/07. Based at least in part on that report, the USPS issued on August 10, 2007 a Final Decision of the Contracting Officer pursuant to the Contract Disputes Act of 1978. A copy of that final Decision is attached.

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, we request a copy of all documents of the USPS regarding these issues, including but not limited to the following:

(1) All records respecting the Lunda-USPS Contract, including its performance;

(2) All records respecting any contracts between Fischer Fischer Theis, Inc. and the USPS dealing in any manner with the Juneau Station in Milwaukee, including FFT's performance under those contracts;

(3) All records respecting any contracts between Walker Restoration Consultants and the USPS dealing in any manner with the Juneau Station in Milwaukee, including Walker's performance under those contracts;

(4) All records respecting any investigation of any kind respecting the leaks occurring at the Juneau Station in Milwaukee after substantial completion of the work by Lunda Construction Company;

(5) All records relied upon or reviewed by the Contracting Officer in issuing the attached August 10, 2007 Contracting Officer's Final Decision; and

(6) All records respecting any investigation of any kind respecting leaks occurring at the Juneau Station in Milwaukee prior to the September 5, 2003 proposal due date for the Parking Deck reconstruction project.

Lunda Construction will pay for all reasonable costs and fees incurred by producing the requested documents up to $500.00. Also, pursuant to Vaughan v. Rosen, 484 F.2d 820 (D.C.Cir. 1973), cert. denied, 415 U.S. 977 (1974), we request an explanation as to the specific bases for each and every denial or failure to supply any category of the requested information.

Thank you in advance for your assistance. If you have any questions concerning this request, please do not hesitate to contact me.

Sincerely,

QUARLES & BRADY LLP

Kevin M. Long

cc: Maria Infangar *(via U.S. Mail)*

UNITED STATES POSTAL SERVICE

# Facsimile Cover Sheet

| | |
|---|---|
| TO: | LARRY LUNDA |
| Company: | LUNDA CONSTR CO. |
| Phone: | |
| Fax: | 920-788-0229 |

| | |
|---|---|
| FROM: | JOHN VLCEK |
| Company: | USPS |
| | CONTRACTING OFFICER |
| | |
| Phone: | |
| Fax: | |

| | |
|---|---|
| Date: | 8/10/2007 |
| Pages including this cover page: | 6 |

CONTRACTING OFFICER'S FINAL DECISION LETTER REGARDING USPS JUNEAU STATION USPS CONTRACT# 162640-03-B-0170

ORIG SENT VIA U.S. MAIL

GREAT LAKES FACILITIES SERVICE OFFICE

UNITED STATES POSTAL SERVICE

August 10, 2007

Mr. Larry Lunda, President
Lunda Construction Company
2000 Taylor Street
PO Box 228
Little Chute, WI 54140

RE: USPS Contract 162640-03-B-0170
USPS Juneau Station, Milwaukee, WI
Contracting Officer's Final Decision

Via Certified Mail
No. 7005-3110-0003-5709-8850
Advanced copy via FAX
(920) 788-0229

Dear Mr. Lunda:

This letter constitutes the Contracting Officer's Final Decision regarding the discovery of latent defects and associated water leakage regarding Lunda Construction Company's (Lunda's) performance at the USPS Juneau Station in Milwaukee, WI.

## A. BACKGROUND

The USPS entered into Contract No. 162640-03-B-0170 with Lunda for the repairs and renovation of the rooftop parking deck at Juneau Station. More specifically, the rooftop parking deck surface at the Juneau Station, Milwaukee, WI, containing approximately 38,000 square feet, was to be replaced. The work included, as set forth in the Statement of Work, demolition and removal of existing 3" thick concrete surface, polyethylene, and insulation, repair of existing pre-cast concrete wall panel connections, new waterproofing membrane system over existing bituthene waterproofing, new rigid insulation, new polyethylene sheets, new deck drains, and new 4" thick concrete surface. The initial contract price was $623,809 and the work was to be completed within 90 calendar days. Notice to proceed was issued on October 8, 2003, which resulted in a contract completion date of January 7, 2004.

The work was substantially completed on December 12, 2003, although, due to weather conditions, final sealing and pavement striping had not yet been done.

The USPS made a determination not to use the deck for parking over the first winter, in order to give the concrete additional curing time and to avoid the need for plowing or the use of any kind of deicing chemicals on the new deck. An off-site parking lease that was put in place to allow the project to proceed was extended for the winter months.

Soon after acceptance, and before the USPS even began using the deck for parking, leaks began. Repairs were made but it continued to leak. After two years of leakage and repairs, it was apparent that there were serious underlying problems with the deck that were causing the waterproofing failures.

During the spring and summer of 2006, several investigative visits and observations occurred including water testing and the removal of selected areas of the concrete topping slab and insulation so as to determine the cause(s) of the leakage.

62 STRATFORD DR
BLOOMINGDALE, IL 60117-7000
TEL: 630-295-8200
FAX: 630-295-8282
WWW.USPS.COM

It was then decided that the Postal Service would hire an independent consulting firm to provide an unbiased determination of the leakage situation. The well-known firm of Walker Restoration Consultants was hired. Larry Church was Walker's lead investigator for this project.

Walker prepared a comprehensive Water Leakage Investigation report dated 4/30/2007 ("Report"). A copy of this report was transmitted to both Lunda and the project's Architect, Fischer-Fischer-Theis, Inc. (FFT) on 5/18/2007. The Report identified several contributing factors that were the primary cause of the leakage. These factors are discussed in more detail below under the Findings section of this decision.

## B. FINDINGS

Based upon the Walker Report, as well as our own observations, it has become clear that the new waterproofing membrane was not properly installed; and this is the primary contributing factor for the leakage. If it had been installed properly, the facility would not be experiencing leaks. The report discusses in detail the primary ways in which the membrane was not installed properly—poor bonding between new membrane and the existing; and poor lapping of adjoining membrane sheets. Regarding the bonding, the Report noted that there was either a weak bond, or no bond, between the Carlisle membrane installed by Lunda and the existing Bituthene membrane. This was readily apparent by the wrinkles that were observed throughout the membrane, and also supported by the Report's finding that in most locations it was possible to separate the two membranes by hand. The wrinkles and the ability to easily separate the two layers of membrane indicate that the new membrane was not adequately adhered to the existing membrane. The Report posits a couple of reasons as to why the membrane did not bond; but it was Lunda's responsibility to ensure proper bonding of the waterproof membrane. This lack of bond between the two membranes was identified in the Report as one of the primary causes of the leakage. Without a proper bond between the two membranes, water was able to get into the space between the two membranes. The Report also discusses inconsistent lap widths as another contributing factor. As required in the contract, the end laps and side laps were to be installed as required by the manufacturer – Section 07110, Part 3.3B. The installation instructions for the Carlisle membrane, which was installed, specified a minimum lap at the side seams of 2.5 inches and 5 inches at the end seam. In several locations it was noted that the lap widths were less than the minimum required 2.5 inches. In some cases, there were no overlaps, but gaps. Additionally, the presence of wrinkled membrane further evidences the failure of the bond. It was also observed that, at the perimeter waterproofing sheets that covered the precast concrete parapet wall connection, in some instances the sheet laps were not even bonded together. As noted in the Report, in order for a membrane to provide a continuous moisture barrier, the sheets must be lapped correctly; and if it's lapped correctly, a seam will be formed that will not be separated under normal use. Lunda failed to lap the sheets correctly.

Beyond the problems related directly to the poor membrane installation, the Report also noted that the drains were installed improperly along the east and west walls in that the drain rim was higher than the structural slab. In some cases the drains were significantly above the level of the slab. This prevented drainage into the drain and since there was no drainage into the drain, there was standing water at these locations which in turn provides an opportunity for water to enter any weakness in the waterproofing membrane. Also, it was noted in the Report that while the project drawings required installation of sump receivers and under-deck clamps, Lunda had not installed them. Also, the drains installed by Lunda were

different than those that had been approved during the shop drawing process. The sump receiver would have lowered the drain and the under-deck clamp would reduce drain movement from temperature changes that could crack the membrane.

The Report lists some other factors which could have contributed to the leakage, but were found to have not done so. I will address these other factors. The Report mentions the lack of a drainage layer on top of the membrane and under the insulation and the lack of drainage channels. Neither of these items were required by the membrane manufacturer (Carlisle) at the time this project was designed. Moreover, neither one of these items would have been necessary if the waterproofing membrane had been installed properly in the first place. This was confirmed both in conversations with Larry Church as well as being expressly stated in the Report that "if the waterproofing system is intact, lack of a drainage layer would not by itself result in leakage." It should also be noted that during our investigations of the rooftop deck, Lunda had installed insulation with drainage channels in some areas of the parking deck but leakage occurred in these areas as well, so the drainage channel did not prevent leakage. Thus, it is my finding that this factor did not cause the leakage.

The Report also refers to the membrane termination on the vertical wall panels and the lack of termination bars. The membrane on the vertical surface was designed such that it was left unbonded on the lower part of the wall panels, and attached only at the top of the membrane. This was the same design used when the rooftop deck was repaired in 1987 and this design presented no leakage problems for over 15 years. This particular design is meant to allow for movement in the membrane so as to minimize the potential for stress and possible breakage at the joint between the structural deck and the vertical wall. A termination bar is merely another alternative that could have been used during the design of this project. Either one would have prevented leakage if the lap and bond between the waterproofing membranes would have been done properly.

There was one other item mentioned in the Report as contributing to the leakage and that is that water leaked into the building at the perimeter CMU wall and at the concrete cap above the HVAC unit. In so far as portions of these areas were not within the scope of work for Contract No. 162640-03-B-0170 with Lunda, should any repairs be made in these areas by Lunda under the terms of this contract for which they were not originally responsible for said repairs, then any such additional work would be considered as additional scope and Lunda will be reimbursed accordingly. It should be noted that as part of the contract work Lunda was required to clean and seal the joint between the asphalt parking lot and the exterior of the wall along the east side of the building as indicated by the note on contract drawing sheet S-101, therefore should this joint be determined inadequate, then Lunda will repair it at no additional cost.

## C. CONCLUSION

In conclusion, it is my decision as Contracting Officer to reject the waterproofing system installed by Lunda on the roof deck since the workmanship of the rooftop deck and waterproofing did not conform to the contract requirements. Pursuant to the Inspection and Acceptance clause of the Contract, Lunda shall remove and replace the waterproofing system without charge to the United States Postal Service within 75 days of receipt of this decision.

Lunda is directed to effectively remove and replace the entire concrete wearing surface, curbs, insulation and waterproofing membrane with new membrane, insulation and concrete curbs and wearing surface. This is a general description of the work and will include flashing, caulking, drains, piping, etc… all as required for a total and complete installation of a waterproof system. The remedial work design documents will be prepared by FFT. All miscellaneous and incidental items for a complete project shall be included. The remedial work already performed and to be completed along the east and south perimeter walls will remain and shall be incorporated into the replacement in a manner so as to warrant a waterproof deck consistent with the original contract requirements. The hot applied membrane system shall be applied sufficiently along the south perimeter wall to facilitate water drainage and direct same toward deck drain structures.

The work along the north and west perimeter walls shall continue to be per the remedial work design that was proposed by the Contractor and Carlisle using the hot applied membrane concept that was suggested to mitigate the condition along the perimeter caused by the contractor's failed work

In an effort to mitigate the cost of the repairs by the contractor, the USPS is willing to accept the construction of the major deck area away from the perimeter using the originally specified sheet membrane material as long as it is acceptable to both the contractor and their supplier, Carlisle. However, Lunda's inadequate bonding of the new to existing membranes has damaged and compromised the underlying substrate in such a manner so as to not adequately allow the USPS to ensure subsequent work will be furnished and installed in a manner sufficient to provide an effective bond. Therefore, Lunda shall fully remove both the newer and previously existing sheet membranes and shot blast the concrete deck in a manner sufficient to allow an effective bare concrete substrate to allow for an adequate bond with the new sheet material.

Should Lunda not be able to warrant that they can effectively get an adequate bond using the sheet material, they may at their additional expense choose to use the hot applied system being used at the perimeter for the entire deck area.

Due to the situation that was caused by the use of inadequate and improperly furnished and installed drain components, as well as the improperly bonded waterproofing material issues previously mentioned, the USPS has considerable apprehension in Lunda's or their subcontractor's ability to properly install these components in the remedial work. It is my position that if the membrane, insulation, and other components previously specified are properly furnished and installed, then the drainage layer mentioned in the Walker Report is not needed. This can further be supported by the length of time the previously applied membrane, following the same design, was installed and performed adequately.

The Walker Report, (similar to the perimeter remedial design previously proposed by Carlisle and implemented by Lunda), has addressed the same concern by the consideration of a 'belt and suspenders' approach. Walker has recommended that the remedial design include the addition of a drainage layer on top of the membrane and under the insulation. The Postal Service's position on this aspect of the work is as follows: If Lunda can guarantee that the sheet waterproofing material and drainage structures will be properly furnished and installed so as to positively shed water and not have a repeat of the current installed situation, the USPS would be willing to forgo the belt and suspenders approach which would require the installation of the drainage material. However, if Lunda does not feel comfortable with this

situation or have this confidence, then I believe the drainage layer material should be furnished. I do acknowledge that the cost of this material was not included in the project's original design, and therefore feel it would not be right for the USPS to request Lunda to furnish it without adequate compensation. Therefore if Lunda would choose to recommend that the drainage material be used as an additional safety measure to assist water migration, the USPS would agree to fairly compensate Lunda for the cost of the material. Should Lunda not recommend its addition, I would fully expect that Lunda will stand behind their reinstallation of the previously specified material.

The USPS is affording Lunda an opportunity to mitigate the costs by doing this work directly. If for some reason you decline to promptly perform the work and follow my directive, the USPS, pursuant to the Inspection and Acceptance clause of the Contract, will re-procure the work with another contractor and charge to cost Lunda.

Lunda's remedial rework will require phasing and close coordination with the users of the facility so as to maintain an adequate amount of employee and customer parking during the duration of the work. Should Lunda be unable or unwilling to phase the work in such a manner to provide this needed parking, then Lunda, at their expense, will need to contract for a nearby rental parking lot, subject to USPS approval of quantity and location, to allow a portion, or perhaps all, parking to be removed from the deck so that the project can be done adequately without severely impacting the needs of the facility. In order to further mitigate Lunda's costs, the USPS would be willing to afford additional time for the total completion of the remedial work, effectively requiring completing all perimeter work yet this construction season, before the onset of winter weather, and allowing Lunda to complete a phased replacement of the remainder of the center portion of the waterproofing and deck in the spring.

Please contact USPS Project Manager Michael Schech at 630-295-6251 promptly upon receipt of this decision to advise of your schedule for mobilization and work activities so that he may coordinate a meeting with the local facility to advise them of same.

This is the final Decision of the Contracting Officer pursuant to the Contracts Disputes Act of 1978 and the clause of your contract entitled Claims and Disputes. You may appeal this decision to the Postal Service Board of Contract Appeals by mailing or otherwise furnishing written notice (preferably in triplicate) to the Contracting Officer within 90 days from the date that you receive this decision. This notice should identify the contract number referenced in this decision, and indicate that an appeal is intended. Alternatively, you may bring the action directly in the United States Claims Court within 12 months from the date you receive this decision.

Sincerely,

John A. Vlcek
Contracting Officer

cc: Maria Infanger – USPS Office of Field Legal Services
Mike Schech – USPS Project Manager
Brian Fischer – Fischer - Fischer - Theis, Inc.